IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| AJLA BALIĆ,<br><br>Plaintiff,<br><br>v.<br><br>A1 KITCHEN & BATH DESIGN, LLC,<br><br>Defendant. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR DAMAGES**

1.

COMES NOW, Plaintiff Ajla Balić ("Plaintiff" or "Ms. Balić"), by and through undersigned counsel, and files this, her Complaint for Damages, and shows the Court as follows:

**NATURE OF COMPLAINT**

2.

Plaintiff brings this action for damages, and reasonable attorneys fees against Defendant A1 Kitchen & Bath (now, "Defendant A1" or "Defendant") for violations of her rights under Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and certain applicable state law claims. Also, brings this action for declaratory

relief, along with liquidated and actual damages, reasonable attorney fees and costs for Defendant's failure to pay federally mandated overtime wages to Plaintiff in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. 201 et seq. (hereinafter the "FLSA")

**JURISDICTION AND VENUE**

3.

Plaintiff invokes the jurisdiction of this court pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1334, and 42 U.S.C. § 2000e-5(f). Plaintiff also invokes this court's jurisdiction to hear Plaintiff's state law claims.

4.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391 and 42 U.S.C. §2000(e)-5(f), venue is appropriate in this Court.

**PARTIES**

5.

Plaintiff is a female citizen of the United States of America and is subject to the jurisdiction of this Court.

6.

Defendant A1 is qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District. During all times relevant hereto, Defendant A1 has employed fifteen (15) or more employees for the requisite duration under the Title VII. Defendant is therefore covered under the Title VII in accordance with 42 U.S.C. 2000e(b)

7.

Defendant A1 is now, and at all times relevant hereto, has been a private employer engaged in interstate commerce and its revenues from commercial activities exceeded $500,000.

8.

Defendant A1 may be served with process by delivering a copy of the summons and complaint to its registered agent at 402 Direct Connection Dr, Rossville, GA, 30741, USA.

## ADMINISTRATIVE PROCEDURES

9.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII. Plaintiff timely filed a charge of discrimination against Defendant A1 with the Equal Employment Opportunity Commission (EEOC).

10.

The EEOC issued a "Notice of Right to Sue" on September 21, 2022, entitling an action to be commenced within ninety (90) days of receipt of that notice.

11.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue".

## FACTUAL ALLEGATIONS

12.

Ms. Balić was hired by Defendant A1 on or about January 21, 2021, as a Sales Representative and Designer.

13.

Casey Ridley ("Ridley") was Ms. Balić's superior and one of the owners of Defendant A1.

14.

Ridley sexually harassed individuals, including Ms. Balić, while employed at A1 Kitchen & Bath.

15.

Defendant A1 was aware of Ridley's propensity to sexually harass its employees.

16.

On or about November 2021, Ms. Balić was offered a promotion from Ridley for the opening of another A1 site in Cleveland, TN.

17.

Starting in approximately November of 2021, Ridley began sexually harassing Ms. Balić. Ms. Balić rejected all of Ridley's advances.

18.

On or about November 30th, 2021, Ridley informed Plaintiff that she was to accompany him on a trip to Cleveland TN, to scout out possible locations for a new A1 business site.

19.

On this trip, Ridley asked inappropriate questions to Ms. Balić, such as "if you were to have sex with someone from work, who would it be?"

20.

Ridley also made comments on this trip about Ms. Balić's body, how she was physically "perfect", and told her how he would watch her walk away from him.

21.

Before returning from the Cleveland trip, Ridley requested that Ms. Balić not mention the promotion, or his comments about her body and sexual questions to her fellow co-workers.

22.

On or about December 9, 2021, Ms. Balić was approached by a co-worker, Ms. Jasmine Baker ("Ms. Baker"), about participating in a sexual encounter with herself and Ridley. Unbeknownst to Ms. Balić at the time, Ridley had asked Ms. Baker to approach Ms. Balić about the prospective encounter.

23.

After this incident and because there were no human resource personnel at Defendant A1, Ms. Balić approached Ridley with concern over Ms. Baker's comments.

24.

Ridley expressed no concern to Plaintiff and was flirtatious with Ms. Balić about the encounter with Ms. Baker stating that he wished he "could have been a fly on the wall for that conversation" and to "keep him updated" if Plaintiff were to change her mind.

25.

On or about January 27 2022, Ridley invited Ms. Balić to hang out with him and some coworkers after work at a bar. When Balić arrived at the bar, she was confused to see only Ridley and another male coworker at the bar.  Subsequently, Ridley offered to show Ms. Balić his girlfriend's new car and drive Ms. Balić to a nearby gas station to purchase cigarettes. Prior to returning to the bar, Ridley drove Ms. Balić to a dark alley, got out of the vehicle, and urinated in front of Ms. Balić.

26.

After Ridley and Ms. Balić returned to the bar, the other male coworker decided to leave. After her coworker left, Ms. Balić also decided to leave because she was not feeling well after having too much to drink and did not want to be alone in that setting with Ridley. As Ms. Balić was leaving, Ridley coaxed her back to his car and stated he had difficult feelings for Ms. Balić, while showing her a fireplace feature of his girlfriend's car. Ridley also told Ms. Balić that it would be perfect for "Netflix and Chill," a common innuendo for a sexual encounter.

27.

Ms. Balić felt extremely uncomfortable and told Ridley his statements were not appropriate as she made her way back to her own car to leave. Ridley proceeded to text her comments such as "quit being nauseous and come back," followed by "I

probably shouldn't say that." and followed up with a text "what are you gonna do? Can't tell if you're debating or not. Lol".

28.

Ridley also made comments about getting Ms. Balić a hotel room because she was intoxicated and commented how appealing that would be with her, despite Ms. Balić saying she was fine and could call her parents if need be.

29.

On or about February 2, 2022, Ridley asked Ms. Balić to accompany him on a work trip to Nashville, TN, to scout out new locations for A1.

30.

Due to Ms. Balić's discomfort from her last two experiences with Ridley in a vehicle, Ms. Balić informed him that she would take her own vehicle.

31.

When both Ms. Balić and Ridley arrived in Nashville, TN, Ridley brought Ms. Balić into his hotel room, sat directly in front of her, and began to scold her for disrupting his plans by bringing her own vehicle.

32.

Despite Ms. Balić not feeling well that day due to feminine issues that had started on the way up to Nashville, Ridley insisted Ms. Balić accompany him to

scout out sites for the new A1 location. Ms. Balić endured Ridley asking numerous questions about her relationship status while on this trip.

33.

Later that evening, Ms. Balić texted Ridley about planning the following day. Ridley then asked Ms. Balić to join him for dinner. Ms. Balić declined Ridley's offer.

34.

Ridley followed up with Ms. Balić and asked her to join him alone in the hotel hot tub. Again, Ms. Balić declined Ridley's offer.

35.

Later that night, Ms. Balić asked Ridley about what the plans would be for the following day and that she had put together a road map for them to follow up with for potential sites. After all his earlier advances had been rejected by Ms. Balić, Ridley abruptly told Ms. Balić that it would be best to just go back to the office the next day and put a pause on the Nashville plans.

36.

Ms. Balić was promised promotions and taken alone on trips by Ridley with Ridley's expectation that she would reciprocate with sexual favors.

37.

As soon as Ms. Balić made it clear that she was not interested in Ridley in that way and refused his sexual advances, Ridley began to retaliate against Ms. Balić by treating her differently and making detrimental remarks about her "poor" performance (despite the previous promises of promotion and trips), and terminated her on February 25, 2022, without any warning, only a few weeks after she refused his sexual advances.

38.

The sexual harassment was severe or pervasive, altering the terms and conditions of Ms. Balić's employment.

39.

Defendant A1 created a hostile work environment that Ms. Balić was required to endure as a condition of employment, and which caused extreme stress and humiliation.

40.

Ms. Balić was subjected to a hostile work environment by Ridley and Defendant A1 and was retaliated against by Ridley and Defendant A1 to her detriment. Defendant A1 made insufficient efforts to protect Ms. Balić from Ridley and perpetuated continued negative influences on her work environment.

41.

Ms. Balić was treated differently than others outside of her protected class, i.e., sex.

42.

Defendant A1 chose not to take reasonable steps to prevent sexual harassment from occurring, despite its knowledge of Ridley's propensity for sexual harassment.

43.

Defendant A1 failed to take appropriate remedial actions to correct the sexual harassment. Instead, Defendant A1 retaliated against Ms. Balić.

44.

Defendant A1 is an "employer" as the term has been defined by the FLSA.

45.

During the relevant time period, January 21, 2021, to February 25, 2022, Ms. Balić was employed by Defendant A1.

46.

Defendant A1 is an "employer" as the term has been defined by the FLSA.

47.

Ms. Balić was an "employee" of Defendant A1, as the term has been defined by the FLSA, 29 U.S.C. § 201 **et seq.**, 29 U.S.C. §203(e).

48.

Throughout Ms. Balić's employment with Defendant A1, she performed non-exempt work as a sales representative and designer and was paid an hourly wage of $10.00 an hour, plus commissions.

49.

From January 21, 2021, to February 25, 2022 (the relevant statutory period for Plaintiff's FLSA claim) Ms. Balić worked an amount of time that was more than (40) hours in given work weeks and was not paid the overtime wage differential calculated at one and one half times her regular rate for hours worked over (40) in such weeks.

50.

During Ms. Balić's employment with Defendant A1, Defendant A1 suffered or permitted her to work in excess of 40 hours in given workweeks without overtime compensation.

51.

Defendant A1 knew or had reason to know that Ms. Balić regularly worked in excess of 40 hours in workweeks without overtime compensation, including but not limited to lunch breaks and hours worked off the clock at Defendant A1's request.

52.

At all times material hereto, Ms. Balić worked approximately three (3) to six (6) hours per work week in excess of 40 hours without overtime compensation at the request of Defendant A1, including but not limited to lunch breaks and hours worked off the clock for promotional and advertising activities for the store.

## CLAIMS FOR RELIEF

## COUNT I: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

53.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

54.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.

55.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

56.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her gender.

57.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her economic, psychological, and physical well-being.

58.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT II: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

59.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

60.

Defendant's actions, as detailed above, in its above-referenced treatment and discharge of Plaintiff because of her protected activity constitutes unlawful intentional retaliation in violation of Title VII.

61.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

62.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful retaliation.

## COUNT III: NEGLIGENT FAILURE TO PREVENT SEXUAL HARASSMENT

63.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

64.

Defendant had a duty to Plaintiff to prevent sexual harassment in the workplace.

65.

By virtue of the aforementioned conduct by Ridley, and the failure to prevent sexual harassment, Defendant failed to use ordinary care to prevent sexual harassment in the workplace, causing Plaintiff to be sexually harassed.

66.

The actions of Defendant were consciously or recklessly indifferent to the inevitable or probable consequences of its conduct in failing to remedy the harassment.

67.

Defendant is thus liable to Plaintiff for damages to her peace, happiness and feelings sustained as a result.

**COUNT IV: NEGLIGENT AND WRONGFUL HIRING, RETENTION AND SUPERVISION**

68.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

69.

Defendant knew, or in the exercise of ordinary diligence, should have known of the propensity of its employees and/or employees at A1, including Ridley, to engage in sexually offensive conduct toward other employees, and Plaintiff in particular.

70.

Defendant nevertheless failed and refused to act to protect Plaintiff.

71.

Defendant is thus liable to Plaintiff for all of the damages sustained as a result.

**COUNT V: RATIFICATION**

72.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

73.

Defendant knew, or in the exercise of ordinary diligence, should have known of the propensity of their employees and/or employees at A1, including Ridley, to engage in sexually offensive conduct toward other employees, and Plaintiff in particular.

74.

Having knowledge of Ridley's sexually offensive and tortious conduct, Defendant permitted the conduct to continue and A1 retained Ridley.

75.

Defendant knew, or should have known, that its employee Ridley posed a danger of sexually offensive conduct toward Defendant's employees, including Plaintiff.

76.

Defendant failed to take action to protect Plaintiff from Ridley, despite possessing knowledge of his sexually offensive conduct.

77.

As a result, Defendant have ratified the sexually offensive conduct and is subject to liability for that conduct.

**COUNT VI: PROMISSORY ESTOPPEL**

78.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

79.

By and through its sexual harassment policies, Defendant promised to prohibit the type of conduct endured by the Plaintiff, and to take allegations of sexual harassment seriously.

80.

Defendant should have reasonably expected Plaintiff to rely on the promise.

81.

Plaintiff did reasonably rely on the promise to her detriment.

82.

Injustice can be avoided only by enforcing the promise.

**COUNT VII: ASSUMPTION OF DUTY**

83.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

84.

Defendant has voluntarily assumed and undertaken the duty to prevent and eliminate sexual harassment in the workplace. Therefore, Defendant has a legal duty to prevent and eliminate sexual harassment in the workplace in a non-negligent manner.

85.

Upon information and belief, Defendant has assumed these duties by, *inter alia*, adopting sexual harassment policies in which it undertook to take certain steps to prevent and eliminate sexual harassment in the workplace.

86.

The employer is in the best position to end sexual harassment in its workplace.

87.

By implementing a sexual harassment policy and disciplining employees for violations of the policy, employers, including Defendant, have the ability to prevent and correct workplace sexual harassment.

88.

Employees depend on a harassment free working environment.

89.

Defendant has voluntarily assumed a duty to investigate and remedy complaints of sexual harassment.

90.

Defendant delegates authority to supervisors over employees.

91.

Sexual harassment should not be a condition of employment.

92.

Sexual harassment is socially harmful behavior.

93.

Plaintiff suffered harm due to her reliance on Defendant to prevent sexual harassment.

94.

Plaintiff relied on Defendant to shoulder the duty to prevent sexual harrassment, to her detriment.

95.

Defendant's failure to exercise reasonable care increased the risk of harm to Plaintiff and other employees.

96.

Defendant's failure to exercise reasonable care caused the Plaintiff to suffer harm from the sexual harassment.

97.

Defendant's failure to exercise reasonable care increased the risk of harm to Plaintiff and other employees.

## COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

98.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

99.

Defendant inflicted severe emotional distress and knew that Plaintiff would suffer from said emotional distress, due to the sexual harassment that Plaintiff experienced.

100.

Defendant's conduct actually caused severe emotional distress to Plaintiff.

101.

Despite Defendant's knowledge of Ridley's history of sexual harassment from other employees employed at Defendant's workplace, Defendant retained the

perpetrator of the harmful behavior and/or took no action to prevent Plaintiff from further harm.

102.

In addition, Defendant retaliated against Plaintiff after she rejected Ridley's sexual harassment by ending her assignment.

103.

This retaliation constitutes intentional, and extreme/outrageous conduct by Defendant.

104.

Defendant is liable for all general and special damages proximately resulting from the intentional infliction of emotional distress.

**COUNT XI: INVASION OF PRIVACY**

105.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

106.

The actions of Ridley and Defendant give rise to the common law claim of Invasion of Privacy.

107.

Ridley unjustifiably intruded upon Plaintiff's right to privacy by unreasonably interfering with her seclusion.

108.

Defendant ratified Ridley's actions.

109.

Defendant is responsible for Ridley's invasion of privacy because it negligently supervised and retained Ridley, nor did they protect Plaintiff from such invasion of privacy.

110.

As a direct and proximate cause of the actions of Defendant, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment. Plaintiff's damages have been experienced in the past, and they will continue in the future.

**COUNT XII: HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT**

111.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

112.

On a consistent basis during Plaintiff's employment, Ridley subjected her to sexual harassment. Plaintiff was obligated to work in an atmosphere that was hostile by virtue of unsolicited and unwelcome sexual advances, comments, sex-based comments, sexual innuendo and other sexually charged conduct. This sexual harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a working environment that was intimidating, insulting and abusive to employees.

113.

Because of its failure to take prompt and remedial action, and its deliberate indifference to sexually hostile conduct, Defendant has intentionally engaged in unlawful employment practices in violation of Title VII.

114.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of sex.

115.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

**COUNT XIII: VIOLATIONS OF THE FAIR LABOR STANDARDS ACT**

116.

Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if set forth herein.

117.

Defendant has violated the FLSA, 29 U.S.C. §201, et seq., including but limited to 29 U.S.C §207, by failing to pay overtime wages for time that Plaintiff worked in excess of forty (40) hours in given workweeks.

118.

Defendant's actions, policies, and/or practices as described above violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiff at the required overtime rate.

119.

Pursuant to the FLSA, 29 U.S.C. §216, Plaintiff brings this lawsuit to recover unpaid overtime wages, liquidated damages in an equal amount, attorneys' fees, and the costs of this litigation.

120.

Defendant knew or showed reckless disregard for the fact its actions, policies, and/or omissions violated the FLSA.

121.

Defendant's violations of the FLSA were willful and in bad faith, thus entitling Plaintiff to a three-year statute of limitations on her claims.

122.

Defendant suffered or permitted Plaintiff to work unpaid overtime hours, and had actual or constructive knowledge that Plaintiff was working unpaid overtime hours.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

(a) Grant Plaintiff a trial by jury as to all triable issues of fact;

(b) Enter judgment against Defendant and awarding Plaintiff unpaid wages pursuant to the FLSA, 29 U.S.C. §§ 206(d), 207, and 216, liquidated

damages as provided by 29 U.S.C. § 216, pre-judgment interest on unpaid wages, court costs, expert witness fees, and reasonable attorneys' fees pursuant to 29 U.S.C. § 216, and all other remedies allowed under the FLSA;

(c)   Grant declaratory judgment declaring that Plaintiff's rights have been violated and that Defendant violated the FLSA;

(d)   General damages for mental and emotional suffering caused by Defendant's misconduct;

(e)   Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(f)   Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(g)   Reasonable attorney's fees and expenses of litigation;

(h)   Trial by jury as to all issues;

(i)   Prejudgment interest at the rate allowed by law;

(j)   Declaratory relief to the effect that Defendant A1 Kitchen & Bath has violated Plaintiff's statutory rights;

(k) Injunctive relief of reinstatement, or back and front pay in lieu thereof, and prohibiting Defendant A1 Kitchen & Bath from further unlawful conduct of the type described herein; and

(l) All other relief to which he may be entitled.

Respectfully submitted the 19th day of December, 2022.

**BARRETT & FARAHANY**

s/ *Kira Y. Fonteneau*
Kira Y. Fonteneau
Georgia Bar No. 103355
John E. Tomlinson
*Pro Hac Vice Application Forthcoming*

*Counsel for Plaintiff Ajla Balić*

PO Box 530092
Atlanta, GA 30353
(404) 214 0120
kira@justiceatwork.com
john@justiceatwork.com